467 So.2d 1358 (1985)
Jason L. ZERINGUE, applying for operator's license
v.
STATE of Louisiana, DEPARTMENT OF PUBLIC SAFETY.
No. 84-CA-521.
Court of Appeal of Louisiana, Fifth Circuit.
April 15, 1985.
Ralph W. Stephenson, Jr., Associate Gen. Counsel, Dept. of Public Safety, Baton Rouge, La., for appellant.
G. Walton Caire, Edgard, La., for appellee.
Before CHEHARDY, KLIEBERT and GRISBAUM, JJ.
CHEHARDY, Judge.
The State of Louisiana, Department of Public Safety, appeals a judgment revoking the suspension of Jason L. Zeringue's driving privileges. The judgment also ordered the return of his driver's license to him and *1359 erasure of the suspension from his record. We affirm.
Jason Zeringue, plaintiff herein, was arrested by a Baton Rouge Police officer on June 8, 1984. After a field sobriety test and an alcohol breath test, Zeringue was issued a citation for violation of Baton Rouge City Ordinance 11.140, driving while intoxicated.
Pursuant to LSA-R.S. 32:667, Zeringue's driver's license was seized and a thirty-day temporary driving permit issued to him. He did not make a timely request for an administrative hearing and at the end of the thirty-day period his driving privileges were suspended for ninety days. However, Zeringue obtained a restraining order and his driving privileges were restored temporarily.
Zeringue subsequently filed this suit, in which he contends that R.S. 32:667 applies only when the arrestee has been charged under LSA-R.S. 14:98. Because he was charged under a municipal ordinance, he argues, seizure of his driver's license and suspension of his driving privileges were unauthorized. The Department of Public Safety answered the suit and the matter was submitted to the district court on stipulation that the only issue was the legal question whether R.S. 32:667 could be applied to a driver arrested for D.W.I. under a municipal ordinance. As stated above, the district court ruled in Zeringue's favor.
The only issue on appeal is whether R.S. 32:667 applies when a driver arrested for driving while intoxicated is charged under a municipal ordinance rather than the state statute. R.S. 32:667 provides for seizure of the arrestee's driver's license and subsequent suspension of the license under certain circumstances.
The relevant portions of the statute state,
"A. When a law enforcement officer places a person under arrest for a violation of R.S. 14:98 and the person either refuses to submit to an approved chemical test for intoxication, or submits to such test and such test results show a blood alcohol level of .10 percent or above by weight of alcohol in the blood, the following procedures shall apply:
(1) The officer shall seize the driver's license of the person under arrest and shall issue in its place a temporary receipt of license on a form approved by the Department of Public Safety and Corrections. Such temporary receipt shall authorize the person to whom it has been issued to operate a motor vehicle upon the public highways of this state for a period not to exceed thirty days from the date of arrest or as otherwise provided herein.
(2) The temporary receipt shall also provide and serve as notice to the person that he has not more than ten days from the date of arrest to make written request to the Department of Public Safety and Corrections for an administrative hearing in accordance with the provisions of R.S. 32:668.
* * * * * *
"B. If such written request is not made by the end of the thirty day period, the person's license shall be suspended as follows:
(1) If the person submitted to the test and the test results show a blood alcohol level of .10 percent or above by weight of alcohol in the blood, his driving privileges shall be suspended for ninety days from the date of suspension on first offense violation without eligibility for a hardship license, for the first thirty days and for three hundred sixty-five days from the date of suspension without eligibility for a hardship license on second and subsequent violations occurring within five years of the first offense."
R.S. 14:98, specifically cited in R.S. 32:667(A), makes operating a vehicle while intoxicated a criminal offense under state law.
On appeal, the Department of Public Safety argues that other statutes concerning suspension of driving privileges for driving while intoxicated make no mention of a specific statute:

*1360 "R.S. 32:661 and 661.1 provide that a person has impliedly consented to the alcohol test `if arrested for any offense' arising out of the act of driving while intoxicated. R.S. 32:414A imposes a suspension upon conviction of a person charged with first offense for `operating a motor vehicle while under the influence of beverages of high alcoholic content, of low alcoholic content, of narcotic drugs or of central nervous system stimulants.' R.S. 32:414B specifically provides for suspension of 12 months in the case of a second conviction within five years where the offenses were the result of `violation of a state law, a municipal ordinance, or a federal law, or any combination of them.' In providing for restricted driving privileges under certain circumstances, R.S. 32:415.1A(2) also contemplates suspension of persons who have been convicted of driving `while under the influence of intoxicating beverages,' but without making any distinction as to the statute or ordinance under which the person was convicted."
Because of the broader language in these statutes, argues the Department, it must have been the intention of the Legislature that R.S. 32:667 apply to all arrests for driving while intoxicated and not be limited only to persons arrested under R.S. 14:98.
We disagree. We refer to the Civil Code rules governing the application and construction of laws:
"When a law is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit." LSA-C.C. art. 13.
"The words of a law are generally to be understood in their most usual signification, without attending so much to the niceties of grammar rules as to the general and popular use of words." LSA-C.C. art. 14.
"Where the words of a law are dubious, their meaning may be sought by examining the context with which the ambiguous words, phrases and sentences may be compared, in order to ascertain their true meaning." LSA-C.C. art. 16.
"Laws in pari materia, or upon the same subject matter, must be construed with a reference to each other; what is clear in one statute may be called in aid to explain what is doubtful in another." LSA-C.C. art. 17.
"The universal and most effectual way of discovering the true meaning of a law, when its expressions are dubious, is by considering the reason and spirit of it, or the cause which induced the Legislature to enact it." LSA-C.C. art. 18.
R.S. 32:667 (as well as the statute immediately preceding it, R.S. 32:666, titled "Refusal to submit to chemical test; exceptions; effects of"), both contain the phrase "a person under arrest for a violation of R.S. 14:98." This language is clear and unambiguous. Therefore we cannot look beyond it to broaden the statute's application to persons arrested for violation of any other law or ordinance relating to driving while intoxicated.
R.S. 32:667 allows seizure of driver's licenses after arrest under R.S. 14:98, with suspension of driving privileges thereafter if the driver fails to apply timely for a hearing with the Department of Public Safety. The Department contends that limiting application of R.S. 32:667 only to persons arrested under R.S. 14:98 would create two classes of drunken drivers, providing for suspension of driving privileges in one case and not the other.
That contention is wrong. In fact, drivers arrested under other laws dealing with driving while intoxicated are subject to license suspension under R.S. 32:414. The distinction is that they must first be convicted before their licenses may be suspended. R.S. 32:667 is more severe; it imposes suspension of driving privileges simply for arrest under R.S. 14:98, if the arrestee either refuses to take the approved chemical test or if he takes the test and is determined to have a blood alcohol level of .10 percent or above. This suspension applies regardless of whether the arrestee is convicted, unless the arrestee makes timely request for an administrative hearing.
*1361 The starting point for interpretation of any statute must be the language of the statute itself. Lewis v. United States, 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980). Courts have the duty to interpret the laws as legislated and, when possible, to honor the clear meaning of a statute as revealed by its language, purpose and history. Clark v. Board of Com'rs, etc., 422 So.2d 247 (La.App. 4 Cir.1982).
Because the language of R.S. 32:667 is clear and unambiguous, we will not disregard the letter of it under the pretext of pursuing its spirit. McElveen v. Calcasieu Parish Police Jury, 443 So.2d 666 (La.App. 3 Cir.1983). See also, Gill Trailer & Equip. Rentals, Inc. v. S. D'Antoni, Inc., 282 So.2d 714 (La.1973).
For the foregoing reasons, the judgment of the district court is affirmed. Costs of this appeal are assessed against appellant.
AFFIRMED.